Filed 3/24/14  Klemke v. ISEC, Inc. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RICHARD KLEMKE et al., | D062568 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2010-00091692-CU PO-CTL) |
| ISEC, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy T. Taylor, Judge.  Reversed.

Rupp Johnston & Lloyd and Andrew F. Lloyd for Plaintiffs and Appellants.

Gordon & Rees, Steven A. Sobel, Matthew G. Kleiner and Brandon D. Saxon, for Defendant and Respondent.

Plaintiffs Richard Klemke, Barry Wang, Wei Wang, Erin Zardouzian, Konstantin Stoletov and Laurie Gay (collectively plaintiffs) appeal after the trial court granted summary judgment in favor of ISEC, Inc. on the ground plaintiffs demonstrated no breach of a legal duty by ISEC and failed to raise a triable issue of fact as to causation.  Plaintiffs contend the trial court improperly granted summary judgment in favor of ISEC because ISEC did not

raise the issue of breach of duty and triable issues of fact exist as to causation. We agree and reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are six individuals that worked as part of the Klemke Lab located in a building at the University of California, San Diego (UCSD). USCD renovated the Klemke Lab in 2004. UCSD contracted with defendant RSM2 Contractors, Inc. (RSM2) to perform demolition, construction, inspection and testing. In turn, RSM2 subcontracted some of the work to defendant A.O. Reed & Company (Reed). UCSD also hired ISEC to install laboratory casework (cabinetry).

Around February 2006, the Klemke Lab moved into the renovated space. After moving into the space, plaintiffs began noticing odors and suffered physical symptoms that they attributed to the odors. The physical symptoms suffered by the plaintiffs varied, but included: eye irritation, dizziness, nausea, fainting, headaches, blurred vision and coughing. The odors were transient and lasted from several minutes to several hours. The physical symptoms could also last several days.

In 2008, it was discovered that the odors were coming from uncapped glass waste lines hidden behind a fume hood and cabinet drawers. The odors stopped after the waste lines were capped.

Plaintiffs sued ISEC, RSM2 and Reed (collectively defendants) alleging causes of action for negligence and negligence per se. All defendants moved for summary judgment or summary adjudication. As relevant to this appeal, ISEC separately moved for summary judgment as to each of the six plaintiffs on the ground each plaintiff could

2

not establish the necessary elements of causation or compensable damages. It alternatively sought summary adjudication as to each plaintiff's claim for damages for fear of cancer (including past medical expenses), medical monitoring and loss of earning capacity.

The trial court granted summary judgment in favor of ISEC as against all plaintiffs on the ground plaintiffs failed to raise a triable issue of material fact as to causation and plaintiffs "demonstrated no breach of a legal duty by ISEC." The trial court also concluded as to plaintiff Barry Wang, that ISEC "properly tendered the issue of duty in its moving papers."

At oral argument on the court's tentative ruling, plaintiffs argued they had no obligation to present any evidence on the issues of duty or breach of duty because ISEC did not present any evidence on these issues and there was "literally one line in their moving papers" on these issues. Plaintiffs argued that had ISEC put the elements of duty and breach at issue in its motion and presented evidence on these elements, they would have presented evidence to support these elements. The trial court rejected plaintiffs' arguments, stating "so far you haven't persuaded me that my tentative is wrong." The trial court concluded that plaintiffs failed to present any evidence showing ISEC acted below the standard of care for a cabinetmaker by installing a cabinet that covered up an uncapped waste pipe.

Plaintiffs moved for reconsideration, but the court concluded that the motion was "untimely" because it had already signed the judgment. Plaintiffs appealed the judgment.

3

DISCUSSION

## I. *General Legal Principles*

Summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Where the defendant is the moving party, it must show that a cause of action has no merit by putting forth evidence that either one or more elements of the cause of action, even if separately pleaded, cannot be established or that a complete defense exists thereto. (Code Civ. Proc., § 437c, subd. (o) & (p)(2); *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).) If the defendant meets this burden, the burden shifts to the plaintiff to establish that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2); *Saelzler*, *supra*, at p. 768.)

We review the trial court's decision to grant summary judgment de novo. (*Saelzler*, *supra*, 25 Cal.4th at p. 768.) We must view the evidence submitted in connection with a motion for summary judgment in a light most favorable to the party opposing the motion and resolve "any evidentiary doubts or ambiguities in plaintiff's favor." (*Ibid.*) We independently determine whether the record supports the trial court's conclusions that the asserted claims fail as a matter of law, and we are not bound by the trial court's stated reasoning or rationales. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951.)

## II. *Analysis*

Plaintiffs assert the trial court erred in granting summary judgment in favor of ISEC because ISEC failed to meet its initial burden of negating their allegations of duty and breach

4

of duty; accordingly, the burden of proof never shifted to them to present any evidence on these elements. We agree.

A notice of motion must state the grounds on which the motion is made. (Code Civ. Proc., § 1010.) A plaintiff opposing a summary judgment motion need not show triable issues of fact on matters not argued by the moving party in its motion. (*Folberg v. Clara G.R. Kinney Co.* (1980) 104 Cal.App.3d 136, 140.) "[W]hen the trial court grants a summary judgment motion on a ground of law not explicitly tendered by the moving party, due process of law requires that the party opposing the motion must be provided an opportunity to respond to the ground of law identified by the court and must be given a chance to show there is a triable issue of fact material to said ground of law." (*Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 70 (*Juge*); accord *Cordova v. 21st Century Ins. Co.* (2005) 129 Cal.App.4th 89, 109 ["trial court violated the settled principle summary judgment may not be granted on a ground not asserted by the moving party without giving the opposing party an opportunity to respond"].) Additionally, where the dispositive ground of law was not asserted in the trial court by the moving party, a reviewing court ordinarily cannot determine if the trial court's decision was correct unless the record establishes that the opposing party "could not have shown a triable issue of material fact had the ground of law been asserted by the moving party." (*Juge*, *supra*, at p. 71.)

"Under general negligence principles, . . . a person ordinarily is obligated to exercise due care in his or her own actions so as not to create an unreasonable risk of injury to others, and this legal duty generally is owed to the class of persons who it is reasonably foreseeable may be injured as the result of the actor's conduct." (*Lugtu v. California Highway Patrol*

5

(2001) 26 Cal.4th 703, 716.) The elements of a cause of action for negligence are duty, breach of the duty, causation, and damages. (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 614.)

Here, ISEC sought summary judgment on the ground each plaintiff could not establish the necessary elements of causation or compensable damages. Accordingly, in drafting its motion, ISEC necessarily assumed that triable issues of fact existed on the precursor elements of duty and breach of duty. (*Paz v. State of California* (2000) 22 Cal.4th 550, 559 [existence of a duty is the threshold element of a negligence cause of action].) The trial court disagreed, concluding that plaintiffs "demonstrated no breach of a legal duty by ISEC." As to plaintiff Barry Wang, the trial court cited to specific portions of ISEC's moving papers to conclude that ISEC "properly tendered the issue of duty in its moving papers."

Review of ISEC's moving papers, including the portions of the record cited by the trial court, refutes the trial court's finding that ISEC argued the issues of duty or breach of duty. The evidence cited by the trial court generally established that UCSD contracted with ISEC to install cabinets, that multiple contractors worked at the site and that two uncapped pipes were found behind cabinets. This evidence does not address the scope of duty for a cabinet installer such as ISEC or whether ISEC breached its duty of care. ISEC's moving points and authorities cited a general statement of law that a negligence cause of action requires a plaintiff prove duty, breach of duty, proximate cause and damages. ISEC, however, *never* argued that it did not owe plaintiffs a duty of care or that the undisputed facts showed no breach of its duty.

Additionally, ISEC *conceded* at oral argument before us that it did not raise the issues of duty or breach of duty in its moving papers and that it did not present any evidence on these issues. It also admitted that it presented no evidence that it did not breach the duty of care alleged by plaintiffs to perform its work in a "competent and workmanlike manner in accordance with applicable contract, plans and specifications as well as all applicable building codes, regulations, and manufacturer specifications" so as not to expose plaintiffs to toxic substances.

Nonetheless, a trial court may decide a summary judgment motion on a ground of law not explicitly tendered by the moving party if it provides the party opposing the motion an opportunity to respond to the ground of law identified by the court and "show there is a triable issue of fact material to said ground of law." (*Juge*, *supra*, 12 Cal.App.4th at p. 70.) The trial court violated plaintiffs' right to due process by depriving them of a meaningful opportunity to present additional argument and evidence.

In its tentative ruling, the trial court did not give plaintiffs leave of court to present additional argument and evidence on the elements of duty or breach thereof. At oral argument below, plaintiffs correctly argued to the trial court that it did not present any evidence on duty or breach of duty because ISEC did not put these elements at issue in its motion. At this point, the trial court should have continued the motion to allow the parties to present argument and evidence on these issues. It did not do so. Instead, the trial court summarily rejected plaintiffs' argument, stating "so far you haven't persuaded me that my tentative is wrong." We fail to see what more plaintiffs could have done to show the trial court the error of its ways.

7

At oral argument below, the trial court and plaintiffs agreed that plaintiffs would raise their grievances to the court's actions in a reconsideration motion. Plaintiffs filed a reconsideration motion, noting therein that defendants served written notice of entry of the ruling by mail on February 22, 2012. (All further date references are to 2012.) Thus, plaintiffs had 10 "days after service upon the party of written notice of entry of the order" to file a motion for reconsideration. (Code Civ. Proc., § 1008, subd. (a).) Although the reconsideration motion in the record on appeal is not date stamped, it was dated February 29. Thus, the motion appears to have been timely filed.

ISEC, however, submitted a judgment and the court signed the judgment on February 28, before plaintiffs filed their reconsideration motion. This act automatically deprived the court of jurisdiction to rule on the motion. (*Safeco Ins. Co. v. Architectural Facades Unlimited, Inc.* (2005) 134 Cal.App.4th 1477, 1482 ["It is well settled that entry of judgment divests the trial court of authority to rule on a motion for reconsideration."].) The trial court denied the reconsideration motion based on lack of jurisdiction, again stated that ISEC tendered the issue of duty in its moving papers and found that plaintiffs' counsel did not have a valid reason for not presenting its expert declaration earlier. (The concurrence notes that plaintiffs did not appeal the denial of their reconsideration motion. (*Post*, Concurrence at fn. 4.) This is not surprising as the trial court properly ruled that it lacked jurisdiction to decide the motion.) ISEC's act of submitting a judgment to the trial court before the 10 days expired for plaintiffs to seek reconsideration appears underhanded as the trial court and plaintiffs agreed that plaintiffs would raise their complaint to the court's actions in a reconsideration motion. This act deprived plaintiffs of their opportunity to

8

address the trial court's procedural error. Moreover, a party opposing a motion for summary judgment has no obligation to present any evidence until the moving party meets its initial burden of production. (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468.) By requiring plaintiffs to file a reconsideration motion containing evidence on the elements of duty and breach thereof the trial court compounded the problem as plaintiffs had no obligation to present any evidence on these elements until ISEC met its initial burden of proof.

In summary, the trial court violated the plaintiffs' right to due process by deciding the summary judgment motion on a ground not raised by ISEC because it did so without giving plaintiffs a meaningful opportunity to respond. Additionally, as we shall discuss, the record was never fully developed on the legal question of duty and the record fails to establish as a matter of law that plaintiffs could not have shown a triable issue of material fact had the issue of breach of duty been argued by ISEC. (*Juge*, *supra*, 12 Cal.App.4th at p. 71.)

ISEC contends the trial court properly rejected plaintiffs' argument, raised for the first time at the hearing on the motion, that it was below the standard of care for a cabinetmaker to install a cabinet that covered up an uncapped waste pipe. Specifically, ISEC argues it did not have a duty to cap the waste pipes as the evidence shows Reed was contracted to cap the waste pipes and plaintiffs are improperly raising for the first time the allegation that ISEC had a duty to not install the cabinetry in front of the uncapped waste lines. We disagree. We begin our review by examining the elements of the causes of action alleged by plaintiffs and scrutinizing the allegations of plaintiffs' complaint.

9

As codified in Evidence Code section 669, the negligence per se doctrine creates a presumption of negligence if four elements are established: "(1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." (*Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1420.) The elements of a cause of action for negligence are duty, breach of the duty, causation and damages. (*Artiglio v. Corning Inc.*, *supra*, 18 Cal.4th at p. 614.) "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide. [Citation.] However, the elements of breach of that duty and causation are ordinarily questions of fact for the jury's determination." (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 278.) Causation may also be a question of law if the facts are undisputed and only one conclusion can be drawn. (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1687.)

Plaintiffs alleged in their complaint that ISEC's "act" was the installation of cabinetry in the Klemke Lab. In their negligence per se cause of action, plaintiffs asserted that the work done by defendants violated applicable California building and plumbing codes and defendants' negligence caused them damages. In their negligence claim, plaintiffs alleged that all defendants, including ISEC, owed them a duty to perform their work in a "competent and workmanlike manner in accordance with applicable contract, plans and specifications as well as all applicable building codes, regulations, and manufacturer specifications" so as not

10

to expose plaintiffs to toxic substances from the building, including the acid waste line drain system. Plaintiffs asserted that defendants, including ISEC, breached their respective duties because two acid waste lines were not capped, which exposed them to toxic substances. As a proximate result of these breaches of duty, plaintiffs claim they suffered damages.

"Negligence may be alleged in general terms; that is, it is sufficient to allege an act was negligently done without stating the particular omission which rendered it negligent. [Citations.] '[T]here is no requirement that [the plaintiff] identify and allege the precise moment of the injury, or the exact nature of the wrongful act.' " (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 747-748.) Here, the complaint does not allege that any of the defendants had a specific duty to cap the waste pipes; rather, plaintiffs generally alleged that all defendants owed them a duty of care to perform their work in accordance with contracts, plans and specifications, building codes, regulations, and manufacturer specifications so as not to expose them to toxic substances.

While it is undisputed that Reed was contractually obligated to cap the waste pipes, this fact does not absolve ISEC of its potential duty of care as alleged by plaintiffs. Moreover, ISEC argued on appeal that expert testimony was necessary to establish the scope of its duty and the applicable standard of care. Notably, ISEC presented no such evidence and, as plaintiffs correctly note, the trial court erred when it chided plaintiffs for failing to present such evidence as ISEC had not met its initial burden of production. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [the burden of production does not shift unless the moving party carries its initial burden].)

11

Simply put, the trial court improperly decided the legal question of whether a duty existed on an incomplete factual record and required plaintiffs to present evidence on the issues of duty and breach of duty in their reconsideration motion when ISEC did not meet its initial burden of production on these issues in its summary judgment motion. We part company with our concurring colleague as we believe an analysis based on *Rowland v. Christian* (1968) 69 Cal.2d 108 is premature because ISEC did not move for summary judgment on this ground, presented absolutely no evidence on the *Rowland* factors and stated in its respondent's brief that expert testimony is necessary to determine the duty issue.

Nonetheless, we may affirm the ruling if it is correct on any ground, regardless of the trial court's stated reasons. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083.) Here, ISEC properly tendered the elements of causation and damages in its notice of motion as to each plaintiff and these issues were fully briefed by the parties. Accordingly, we examine whether ISEC met its initial burden of showing plaintiffs' negligence and negligence per se causes of action had no merit by putting forth evidence that the elements of causation or damages could not be established. (Code Civ. Proc., § 437c, subd. (o) & (p)(2).) ISEC generally argued that all plaintiffs could not establish causation because they could not show what the alleged odors were composed of, that they were exposed to any hazardous substances or what caused their symptoms. ISEC reasoned that because plaintiffs were not injured, they suffered no damages. ISEC presented evidence suggesting each plaintiff could not establish exposure to any hazardous substances or physical injury attributable to any such exposure. Accordingly, ISEC met its initial burden of proof and the

burden shifted to plaintiffs to show a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).)

Plaintiffs satisfied their burden. In opposition to the motion, plaintiffs presented declarations from three experts. Jim Tarr, a chemical engineer, addressed the mechanism of delivery of toxic or noxious chemicals and the likely sources of exposure to the plaintiffs. Dr. Rod O'Connor, an environmental chemical toxicologist, rendered opinions regarding chemical exposure and drew conclusions as to whether the injuries suffered were causally related to chemical exposure. Finally, Ralph Szaras, an industrial hygienist, inspected the Klemke Lab and tested the air in the early part of January 2012.

Szaras's testing revealed a "chemical fog" that "smelled foul" and corroded brass fittings and plastic on the sampling container. Testing by Tarr revealed two toxic chemicals (acetonirile and xylene) in an uncapped waste line. Tarr opined that the waste lines likely contaminated the air in the Klemke Lab with noxious or toxic chemicals. Based on the nature of the odors, Dr. O'Connor identified four chemicals used in some laboratories connected to the faulty drain system that could cause the physical symptoms suffered by plaintiffs. Dr. O'Connor concluded that the faulty drainage system exposed plaintiffs to toxic chemicals, that the odors caused the symptoms that plaintiffs experienced, that plaintiffs suffered physical injuries consistent with exposure to one or more toxic chemicals and had an increased risk for long-term health effects. From this evidence a trier of fact could reasonably infer that the odors that caused plaintiffs' physical symptoms were toxic and came from the uncapped waste lines. Accordingly, the trial court erred by granting summary judgment based on lack of causation. Because the record is devoid of any evidence

13

regarding the scope of ISEC's duty of care, we express no opinion on the ultimate merit of plaintiffs' claims.

Finally, we note that ISEC argued in its respondent's brief that the trial court should have granted its alternative request for summary adjudication of plaintiffs' claims for damages for fear of cancer (including past medical expenses), medical monitoring and loss of earning capacity. This matter is not properly before us. Plaintiffs did not raise this issue in its opening brief and ISEC failed to file a cross-appeal. (*California State Employees' Assn. v. State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7 [a respondent who does not appeal from the judgment may not argue error on appeal].)

## DISPOSITION

The judgment is reversed. Plaintiffs are entitled to their costs on appeal.

McINTYRE, J.

I CONCUR:

IRION, J.

14

BENKE, Acting P. J., Concurring.

I write separately to make clear two points.  First, I wholeheartedly agree with the majority that this court has *not* decided the issue of whether ISEC, Inc. owed a duty of care sounding in tort to plaintiffs.  (See maj. opn. *ante*, at p. 11 ["While it is undisputed that [the plumbing subcontractor] was contractually obligated to cap the waste pipes, this fact does not absolve ISEC of its *potential* duty of care as *alleged* by plaintiffs."  (Italics added.)].)  I further note the trial court likewise did not reach that issue, despite the majority's statement otherwise (see maj. opn. *ante*, at p. 12 ["Simply put, the trial court improperly decided the legal question of whether a duty existed on an incomplete factual record . . . ."]), when it granted summary judgment in favor of ISEC, as the record shows the court found no triable issue of material fact on the issues of breach *and* causation.

Second, assuming the parties on remand tee up the duty issue, I have reservations whether plaintiffs can establish that ISEC owed them a duty of care.  Looking at the *entire*[1] record and considering that ISEC was merely a subcontractor/cabinet installer under a third-party contract with the University of California, San Diego (UCSD) involving a project to renovate a school laboratory, in my view, the duty factors outlined by our Supreme Court in *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*) suggest ISEC may not owe such a duty.

---

[1]    I say *entire* because I am including the "evidence" plaintiffs proffered on the issue of duty—as opposed to the breach thereof—in the declaration of their general contractor expert, Larry J. Gliko, in support of their motion for reconsideration that the trial court did not consider when it denied that motion.

That said, I recognize the majority's point that plaintiffs should at least be afforded an opportunity to brief any issue that the trial court uses as a basis to grant summary judgment. Therefore, I concur in the majority decision to remand the case on the grounds the trial court violated plaintiffs' due process rights when it decided ISEC's motion for summary judgment on a ground neither raised by ISEC nor briefed by plaintiffs.

OVERVIEW

ISEC was one of several defendants that participated in the renovation of a laboratory (the Klemke lab) at UCSD. ISEC was contracted by UCSD to build laboratory cabinetry in the Klemke lab. About four years after ISEC completed its work, two glass acid waste lines were found uncapped. Plaintiffs Richard Klemke, Barry Wang, Wei Wang, Erin Zardouzian, Konstantin Stoletov and Laurie Gay worked in the Klemke lab. They sued the general contractor RSM2 Contractors, Inc. (RSM2), the plumbing subcontractor A.O. Reed & Co. (A.O. Reed) and ISEC for negligence as a result of their exposure to "toxic, noxious, and/or hazardous liquids, gasses and solids from . . . the acid waste line drain system" (toxic substances).

Plaintiffs in their operative complaint alleged that defendants ISEC, RSM2 and A.O. Reed owed them a duty "to perform works of demolition, construction, renovation, inspection, and testing at the [Klemke lab] in a competent and workmanlike manner in accordance with applicable contract, plans, and specifications as well as all applicable building codes, regulations, and manufacturer specifications so that said individuals would not be exposed" to toxic substances. They further alleged defendants breached

2

that duty and caused them injury because the uncapped waste lines were "hidden, concealed and not observable by a reasonable person and [p]laintiffs were not aware of, nor could they reasonably . . . have become aware of, the physical cause of their injuries and the negligent acts and defective conditions which caused their injuries before such discovery."

ISEC[2] moved for summary judgment/adjudication as to each of the six plaintiffs.[3] ISEC contended in its moving papers that plaintiffs could not establish ISEC caused them to suffer compensable damages. ISEC alternatively contended that as a matter of law plaintiffs could not recover " 'damages for fear of cancer and any past medical expenses stemming therefrom, damages for medical monitoring, and damages for loss of earning capacity.' "

The trial court granted ISEC's motion(s) for summary judgment against plaintiffs. In so doing, the court noted in its order that in addition to moving for summary judgment on the issue of causation and damages, ISEC also "properly tendered the issue of duty in

---

[2]    RSM2 and A.O. Reed also separately filed motions for summary judgment/adjudication. The trial court denied the motions for summary judgment of RSM2 and A.O. Reed in part because it found each owed a duty of care to plaintiffs in connection with the uncapped waste lines. The court, however, granted their alternative motions for summary adjudication on plaintiffs' claim for damages for fear of future injury. Because the trial court granted summary judgment in favor of ISEC, it did not reach ISEC's separate request for summary adjudication on this same issue.

[3]    Although ISEC filed six separate motions for summary judgment/adjudication, in my review of the record I note, as do the parties, that the motions are substantially similar. This view was also shared by the trial court. Thus, unless otherwise indicated, my discussion refers and applies to each of the six individual summary judgment motions.

3

its moving papers." The court, however, did not use duty as the basis to grant summary judgment; instead, the court found that plaintiffs did not provide "a hint of evidence linking the uncapped waste pipe to any work performed in the [Klemke lab] by ISEC in 2004" and that plaintiffs, in their additional undisputed material facts, admitted that ISEC was not "in any manner responsible for [capping] the acid waste pipes. The court thus granted summary judgment because plaintiffs "failed to raise a triable issue of fact as to *causation* with respect to ISEC[] and . . . demonstrated no *breach* of a legal duty by ISEC . . . ." (Italics added.)

Plaintiffs subsequently moved for reconsideration based on new and additional facts. As relevant here, plaintiffs in that motion included the declaration of their general contracting expert, Larry Gliko, who opined in part as follows:

"I was retained as an expert for plaintiffs in this matter in or about March 2011. My first visit to the site was on March 29, 2011. I personally observed the areas where the uncapped drain lines were found. I have reviewed the plans form the 2004 renovation undertaken by defendants in this matter. I have reviewed the pertinent provisions of the contract between the University of California, San Diego and RSM2, the general contractor. I have also reviewed pertinent portions of the testimony of Douglas Reed from A. O. Reed, and Robert Samuel from RSM2 [citations]. I have experience with a knowledge of installation of casework as a result of my work as a general contractor and forensic expert. Casework is typically installed at the end of construction or remodel as part of the 'finish' work. The standard of practice and the standard of care for casework

4

installers is that they not cover up defective or incomplete work done by others.  This standard of practice and standard of care is particularly applicable to open drain lines.  *A casework installer has a duty not to cover up open drain lines.*"  (Italics added.)

Plaintiffs contended this evidence was not available previously because the parties had just recently designated their experts and because plaintiffs did not understand the issue of duty was part of ISEC's summary judgment motion.

As noted, the trial court denied the motion for reconsideration as it related to ISEC on the basis it was untimely because plaintiffs filed the motion after judgment was entered in favor of ISEC.[4]  The court thus found it lacked jurisdiction to hear the motion.

DISCUSSION

A.  *Guiding Principles*

The elements of a cause of action for negligence are: duty, breach of duty, legal cause and damages.  (*Ahern v. Dillenback* (1991) 1 Cal.App.4th 36, 42.)  The existence of a duty is the "threshold element" of a negligence cause of action (*Friedman v. Merck & Co.* (2003) 107 Cal.App.4th 454, 463) and is a question of law for the court.  (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 (*Ann M.*), disapproved on other grounds by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5.)  "Duty, being a

---

[4]    Plaintiffs' appeal does *not* include the order denying their motion for reconsideration.  That being the case, the reconsideration motion is significant because, as I noted, it included the "evidence" plaintiffs proffered (after the trial court *already* had granted summary judgment against them) in an attempt to establish ISEC owed them a duty of care.

question of law, is particularly amendable to resolution by summary judgment." (*Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 465.)

"A judicial conclusion that a duty is present or absent is merely '"a shorthand statement . . . rather than an aid to analysis . . . . '[D]uty,' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection."' [Citation.] 'Courts, however, have invoked the concept of duty to limit generally "the otherwise potentially infinite liability which would follow from every negligent act . . . ."' [Citation.]" (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397; see also *Ludwig v. City of San Diego* (1998) 65 Cal.App.4th 1105, 1110.)

A duty of care generally arises through statute, contract, the general character of the activity, or the relationship between the parties. (*J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803.) Here, plaintiffs and ISEC were not parties to a contract. In addition, the Gliko declaration does not point to any statute, building code or regulation to support his opinion that ISEC owed a duty of care to plaintiffs.

Finally, it does not appear there is any relationship between the parties that, in my view, would give rise to a duty. (See *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1129 [observing that a duty of care may arise if "'"a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or . . . a special relation exists between the actor and the other which gives the other a right to protection"'"].)

6

Thus, it appears that any duty owed by ISEC to plaintiffs would necessarily arise through the general character of ISEC's activities. (See *Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1074 [noting a reviewing court reviews a trial court's ruling and "not its rationale" when determining whether the grant of summary judgment was proper and, thus, a court of review is not bound by the trial court's stated reasons and will affirm the judgment if correct on any theory advanced].)

B.  *Duty of Care Factors*

The factors to be considered in the duty analysis include: (1) the foreseeability of harm to the injured party; (2) the degree of certainty that the injured party suffered harm; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden on the defendant and the consequences to the community of imposing a duty to exercise care with resulting potential liability. (See *Rowland*, *supra*, 69 Cal.2d at pp. 112-113; see also *Ann M.*, *supra*, 6 Cal.4th at p. 675, fn. 5 [using *Rowland* factors in determining shopping center did not owe a duty to a tenant's employee to provide security to patrol the common areas of a shopping center where the plaintiff was raped].)

1.  *Foreseeability of Harm*

In assessing the foreseeability factor, a court of review does not decide whether a plaintiff's particular injuries were reasonably foreseeable as a result of the particular actions of a defendant; rather, we "evaluate more generally whether the category of

7

negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6.) Foreseeability is determined in light of the totality of the circumstances and balanced against the burden to be imposed. (*Ann M.*, *supra*, 6 Cal.4th at pp. 677-678.)

Further, to support a duty of care, the foreseeability must be reasonable. (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 402.) "The reasonableness standard is a test which determines if, in the opinion of a court, the degree of foreseeability is high enough to charge the defendant with the duty to act on it. If injury to another '"is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct"' [citations], we must label the injury 'reasonably foreseeable' and go on to balance the other *Rowland* considerations." (*Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 307.)

However, foreseeability alone is not sufficient to create an independent tort duty. "Because the consequences of a negligent act must be limited to avoid an intolerable burden on society [citation], the determination of duty 'recognizes that policy considerations may dictate a cause of action should not be sanctioned no matter how foreseeable the risk.' [Citation.] '[T]here are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone provides a socially and judicially acceptable limit on recovery of damages for [an] injury.' [Citation.] In short, foreseeability is not synonymous with duty; nor is it a

8

substitute."  (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 552 see also *Friedman v. Merck & Co.* (2003) 107 Cal.App.4th 454, 465–466 [noting that "[m]ore than a mere possibility of occurrence is required since, with hindsight, everything is foreseeable"].)

Here, I conclude the foreseeability factor may favor ISEC.  In my view, it is not reasonable to require a cabinet installer to foresee that, in installing cabinetry in the Klemke lab pursuant to a contract with UCSD, ISEC would be liable in tort four *years* later for injuries to third parties due to the failure of the plumber and/or general contractor to install one or more caps on waste lines that ISEC had absolutely nothing to do with.  (See *N.N.V. v. American Assn. of Blood Banks* (1999) 75 Cal.App.4th 1358, 1376 [noting that "'"[w]ithout evidence that a defendant knew or reasonably should have known there was any danger or potential danger associated with that defendant's act or failure to act, any imposition of liability would in essence be the imposition of liability without fault"'"].)

That said, the record shows plaintiffs generally alleged in their operative complaint that defendants (including ISEC) owed them a duty to perform their work in accordance with applicable contracts, plans, and specifications as well as with all applicable building codes, regulations and specifications and that defendants breached that duty because the waste lines were uncapped and hidden.  On remand, *if* the issue of duty or breach thereof arises, plaintiffs will then have a chance to proffer evidence to support these general allegations.[5]

---

5    As noted *ante*, the Gliko declaration includes merely a one-line sentence generally stating that ISEC (allegedly) owed plaintiffs a duty not to cover up the waste lines.

2. *Degree of Certainty Plaintiffs Suffered Harm*

Here, the record shows the trial court granted the summary adjudication motions of RSM2 and A.O. Reed concerning plaintiffs' claims for damages related to fear of future injury. The court did not rule on ISEC's similar summary adjudication motion because it granted summary judgment for ISEC.

Nonetheless, the court's ruling denying the motions for summary judgment of RSM2 and A.O. Reed states plaintiffs proffered sufficient evidence to show they suffered injury from exposure to the toxic substances. As such, I conclude this factor may favor the plaintiffs.

3. *Connection Between ISEC's Conduct and the Injury Suffered*

This factor, in my view, may favor ISEC. As noted, ISEC was *not* responsible for the uncapped waste lines in the Klemke lab, as plaintiffs readily admit as follows in their omnibus opposition to the summary judgment motions (omnibus opposition):

"This is a negligence case where the six individual [p]laintiffs suffered physical injuries as a result of the ingestion of toxic substances that entered their lab through *uncapped* glass laboratory waste lines. . . . When, in October 2008, not one, but two, *uncapped* laboratory waste lines were located *and capped* the [p]laintiffs' physical symptoms *ceased*. . . .

"Interestingly, the only [d]efendant arguing against liability ('not my scope of work') is A.O. Reed—the plumbing subcontractor who admits to being responsible for all plumbing work during a 2004 remodel of the space where the uncapped lines were found.

10

There is substantial evidence that contravenes A.O. Reed's denial of liability. The evidence includes its subcontract with RSM2 (the general contractor) where its scope of work specifically includes waste lines. It also includes the plans that show the 'point of removal' for plumbing lines at the very location where the first uncapped line was found in 2008 hidden behind casework [i.e., cabinetry] installed as part of the renovation.

". . .The [plaintiffs'] experts' investigation has established a causal connection between the uncapped drain lines and the [p]laintiffs' physical injuries. Toxic substances were the source of the odor. The open lines hidden by cabinetry installed in 2004 vented toxic substances into the [Klemke lab] where [p]laintiffs worked for two and a half years." (Italics added.)

In discussing A.O. Reed's role in the remodel, the omnibus opposition further notes that A.O. Reed's subcontract with RSM2 provides that the "'[s]cope of [w]ork'" of the plumber A.O. Reed included: "[l]ab vacuum piping," "[g]as piping," "[*w*]*aste and vent piping*," "[i]ndustrial hot and cold water piping," "[i]nsulation" and "[d]emolition." (Italics added.) In addition, the omnibus opposition refers to the testimony of the project manager of A.O. Reed who admitted it was "his company's responsibility to do the 2004 [r]enovation demolition and plumbing" *and* it was "their responsibility to cap the pipes that were removed to the point of removal." The principal of RSM2 further testified "that all plumbing work was the responsibility of A.O. Reed and there was no one else on the site qualified to cap the acid waste line pipes."

11

In specifically discussing the issue of duty in the omnibus opposition, plaintiffs noted that "[e]veryone agrees that A.O. Reed was responsible for all plumbing work on the project," repeated that the plumber's scope of work specifically included " '[w]aste and vent piping'" and "'[d]emolition'" and finally concluded that it was A.O. Reed's "job" to cap the waste lines since "[t]hey were the plumbers."  In my view, the required "close" connection (see *Rowland*, *supra*, 69 Cal.2d at p. 113) may be lacking between ISEC's conduct in installing the cabinetry and the injury plaintiffs suffered as a result of the conduct of others responsible for the plumbing in the Klemke lab.

4. *Moral Blame*

"Moral blame has been applied to describe a defendant's culpability in terms of the defendant's state of mind and the inherently harmful nature of the defendant's acts. . . . [C]ourts have required a higher degree of moral culpability such as where the defendant (1) intended or planned the harmful result [citation]; (2) had actual or constructive knowledge of the harmful consequences of [the defendant's] behavior [citation]; (3) acted in bad faith or with a reckless indifference to the results of [the defendant's] conduct [citations]; or (4) engaged in inherently harmful acts [citation]."  (*Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 270.)

I conclude this factor may favor ISEC for the same reason as the preceding factor. ISEC merely installed cabinetry in the Klemke lab pursuant to its contract with UCSD. Although there is no evidence in the *current* record that ISEC had actual or constructive knowledge that it was placing its cabinetry over uncapped lines that it was not

12

responsible for, on remand to the extent this becomes an issue the plaintiffs will have the opportunity to proffer any such evidence (or any other evidence) they believe is relevant to this analysis.

5. *Prevention of Future Harm*

I conclude that attaching potential liability to ISEC's conduct likely may not prevent future harm, inasmuch as the *current* record shows ISEC had absolutely no control over the waste lines, including capping such lines. Thus, in my view, this factor may also tend to favor ISEC.

6. *Burden on ISEC and Consequences to the Community*

Based on the *current* record, in my view the burden on ISEC and the consequences to the community of imposing a duty in this case may be unacceptable. A "person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations. Instead, '"[c]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies."' [Citations.]" (*Aas v. Superior Court* (2000) 24 Cal.4th 627, 643, superseded by statute on another ground as stated in *Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1079; see also *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 989 [noting that conduct constituting a breach of contract is tortious only when it also violates a duty independent of the contract arising from principles of tort law]; see also *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85, 95 [reiterating the "important

13

differences between contract and tort theories of recovery" and noting "that limiting contract breach damages to those within the reasonably foreseeable contemplation of the parties when the contract was formed 'serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise' "].)

Imposing a duty on ISEC in this case may saddle it "with a burden of uncertain but potentially very large scope. One of the consequences to the community of such an extension is the cost of insuring against liability of unknown but potentially massive dimension." (See *Oddone v. Superior Court* (2009) 179 Cal.App.4th 813, 822 [refusing to impose a duty on an employer for injuries sustained by employee's surviving spouse who sued employer for negligence alleging injury by secondary exposure to toxic vapors and chemicals allegedly carried home by employee on his clothes and person].)

In sum, when applied to the *current* record, it appears the *Rowland* factors may support the conclusion that ISEC would not owe plaintiffs a duty sounding in tort. However, because the duty issue was neither raised nor briefed below, I concur with the majority that the matter should be remanded to allow the parties to brief it (and any others) on a full and complete record before it may be the basis of summary judgment.


BENKE, Acting P. J.


14