Opinion
 

 NICHOLSON, J.
 

 The owners of a house rented to a tenant they knew had a drinking problem and kept firearms in the rented dwelling. While under the influence of alcohol, the tenant accidentally shot a visitor. We hold the landlords did not owe a duty of care to the visitor because the injury was not foreseeable.
 

 Facts and Procedure
 

 On February 8, 1992, plaintiff Lisa Sturgeon visited a friend’s home. Sturgeon’s friend lived in Roseville in a house Thomas Curnutt rented from his parents, the defendants, Hugh and Wilma Curnutt. During Sturgeon’s visit, Thomas displayed a firearm, and, while he waved it around, it accidentally fired. The bullet entered and exited Sturgeon’s abdomen, penetrated her elbow, reentered her body and exited her buttocks, severing a tendon there.
 

 
 *304
 
 Sturgeon filed suit against Thomas and the defendants for intentional tort and negligence. Thomas filed for bankruptcy and the suit was dismissed as to him.
 

 In opening statement at trial, Sturgeon’s attorney outlined the injury and indicated the evidence would show alcohol was present and Thomas appeared to be under the influence. After the incident, Thomas suggested Sturgeon might go to the hospital. However, he did not call an ambulance. After Sturgeon left, Thomas wiped the chair Sturgeon had been sitting in and disappeared for a day, staying at his father’s home. Thomas has a history of alcohol problems. His father was aware of them, having paid for Thomas’s rehabilitation at Charter Hospital.
 

 Counsel began to mention Hugh paid for an attorney to represent Thomas in a battery case. The defense promptly objected. A hearing was held outside the presence of the jury. The defendants objected to any evidence concerning Thomas’s 1992 conviction for battery, which occurred subsequent to this incident. They objected on the basis such evidence was irrelevant and prejudicial. Sturgeon argued that paying for an attorney and bail showed the defendants had control over Thomas, who was 35 at the time of trial. The court excluded the evidence as irrelevant, without significant probative value, and prejudicial.
 

 The discussion then turned to Thomas’s conviction in 1991 for driving under the influence of alcohol in 1989. The defendants objected, arguing the conviction did not show any propensity for violence. The defense explained its theory of the case was that the defendants, as landlords, had a duty to remove dangerous conditions and such a condition existed in Thomas’s gun ownership and misuse of alcohol. The court ruled the conviction for driving under the influence could be mentioned in the opening statement.
 

 Sturgeon’s attorney resumed his opening statement. He declared Hugh knew Thomas used alcohol, having paid for an alcohol rehabilitation program. Hugh also knew of Thomas’s driving while under the influence conviction and helped him get insurance after that conviction.
 

 Thomas and his wife owned the property at 315 Grove Street. When they divorced, Hugh bought the property. He rented the property to another son, and then to an unrelated third party. During this period, Hugh made four or five trips to the property to check both the outside and inside. When Thomas needed a place to live, Hugh asked the tenant to move out and Thomas moved in. Hugh went to the house several times and had an opportunity to look around. On one trip, he took Thomas to a rehabilitation center.
 

 
 *305
 
 The day after the shooting, two police officers went to the house and observed bags of spent shells lying about. In the basement, there was a helmet made of the material used in bulletproof vests; it had holes in it. There were about 20 spent shells lying about. Upstairs there was a big green gun safe. Next to the safe, there was a container of magazines for bullets. Hugh claimed he never saw any of these items in the house. Thomas’s ex-wife stated the defendants knew Thomas had weapons and that he misused alcohol.
 

 Outside the presence of the jury, the defense moved for a nonsuit, arguing the injury to Sturgeon was unforeseeable. Sturgeon argued a tenant who is an alcoholic and has firearms is similar to a tenant who possesses a dangerous dog; in both cases the landlord has liability for a dangerous condition on the premises. The trial court disagreed, granting the motion for nonsuit, and Sturgeon appeals.
 

 Discussion
 

 I
 

 Sandard of Review
 

 Section 581c of the Code of Civil Procedure authorizes a motion for nonsuit after plaintiff’s opening statement. In ruling on the motion, the court must accept as true all facts set forth in the statement and indulge in every legitimate inference that may be drawn from such facts.
 
 (Timmsen
 
 v.
 
 Forest E. Olson, Inc.
 
 (1970) 6 Cal.App.3d 860, 867-868 [86 Cal.Rptr. 359].) Granting a motion for nonsuit at this stage is a disfavored practice and will be upheld only where it is clear plaintiff’s counsel has stated all facts he expects to prove and such facts do not constitute a cause of action.
 
 (Uccello
 
 v.
 
 Laudenslayer
 
 (1975) 44 Cal.App.3d 504, 509 [118 Cal.Rptr. 741, 81 A.L.R.3d 628].) Sturgeon does not contend she could prove additional facts, so we must determine whether her opening statement set forth sufficient facts to constitute a cause of action against defendants.
 

 II
 

 Landlord Liability
 

 Sturgeon’s action against the defendants is based on the theory of landlord liability. The existence of the landlord’s duty to others to maintain the property in a reasonably safe condition is a question of law for the court.
 
 (Ann M.
 
 v.
 
 Pacific Plaza Shopping Center
 
 (1993) 6 Cal.4th 666, 674 [25
 
 *306
 
 Cal.Rptr.2d 137, 863 P.2d 207].) As Sturgeon’s attorney stated at trial: “We’re not dealing with the issue of parent-child relationship. We’re dealing with a landlord-tenant relationship with some overtones of what a parent knows . . . .”
 

 Generally, a landowner has a duty to maintain the land in a reasonably safe condition.
 
 (Ann M.
 
 v.
 
 Pacific Plaza Shopping Center, supra,
 
 6 Cal.4th at p. 674.) Exceptions to this general rule of liability are made only when clearly supported by public policy.
 
 (Rowland
 
 v.
 
 Christian
 
 (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) Rowland sets forth considerations to balance when determining whether an exception to the general rule of liability should be made. They are “foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the injury suffered, the moral blame attached to the defendant’s conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.”
 
 {Id.
 
 at p. 113.)
 

 The first of the
 
 Rowland
 
 considerations is foreseeability. While we characterize foreseeability as a consideration, it is more than that. If the court concludes the injury was not foreseeable, there was no duty. There is no need to discuss the remaining considerations. (See
 
 Ann M.
 
 v.
 
 Pacific Plaza Shopping Center, supra, 6
 
 Cal.4th at pp. 679-680.) However, the opposite is not necessarily true. A foreseeable injury does not necessarily ordain a conclusion of duty. (See
 
 Bily
 
 v.
 
 Arthur Young & Co.
 
 (1992) 3 Cal.4th 370, 412 [11 Cal.Rptr.2d 51, 834 P.2d 745].)
 

 Foreseeability supports a duty only to the extent the foreseeability is reasonable. In a recent case, a woman was raped in a secluded area of a shopping center. She sued the shopping center.
 
 {Ann M.
 
 v.
 
 Pacific Plaza Shopping Center, supra,
 
 6 Cal.4th at pp. 670-671.) Discussing the foreseeability of injury, the Supreme Court noted there were no prior similar incidents in the shopping center. It therefore found the plaintiffs injury was not foreseeable.
 
 {Id.
 
 at pp. 679-680.)
 

 Despite the absence of prior similar incidents, it is
 
 possible,
 
 in today’s criminal environment, to foresee a woman will be attacked in a secluded area of any shopping center. It is also
 
 possible
 
 heavy rainfall will cause the Sacramento and American Rivers to inundate Sacramento. Yet, we continue to visit shopping centers and live and work here. Objective foreseeability (the logical opposite only of impossibility) is tempered by subjective reasonableness, both in our everyday decisions as individuals and in the decisions of the courts concerning duty.
 

 
 *307
 
 On a clear day, you can foresee forever.
 
 (Thing
 
 v.
 
 La Chusa
 
 (1989) 48 Cal.3d 644, 668 [257 Cal.Rptr. 865, 771 P.2d 814], attributing the thought to Bernard E. Witkin, Esq.) By invoking a subjective reasonableness standard, however, the courts cloud the view to bring imposition of duty in line with practical conduct. The reasonableness standard is a test which determines if, in the opinion of a court, the degree of foreseeability is high enough to charge the defendant with the duty to act on it. If injury to another “ ‘is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct’ ”
 
 (Bigbee
 
 v.
 
 Pacific Tel. & Tel. Co.
 
 (1983) 34 Cal.3d 49, 57 [192 Cal.Rptr. 857, 665 P.2d 947], quoting 2 Harper & James, Law of Torts (1956) § 18.2, p. 1020, brackets in original), we must label the injury “reasonably foreseeable” and go on to balance the other
 
 Rowland
 
 considerations. Here, we conclude Sturgeon’s injury was not reasonably foreseeable.
 

 Sturgeon’s opening statement indicated the defendants knew Thomas misused alcohol and had firearms. Sturgeon contends this evidence is similar to a landlord knowing the tenant has a vicious dog. In
 
 Uccello
 
 v.
 
 Laudenslayer, supra,
 
 44 Cal.App.3d 504, the court found it was error to grant a motion for a nonsuit because the opening statement indicated the landlord knew the tenant had a dangerous dog and the landlord had the ability to evict the tenant or force him to get rid of the dog. In concluding the landlord owed a duty of care, the court stated: “Moreover, a recognition of a landlord’s duty of care in the situation before us is consistent with the principles articulated in
 
 Rowland
 
 v.
 
 Christian, supra.
 
 ...[][] Assuming respondent’s knowledge of the
 
 vicious
 
 dog, the foreseeability of harm to the appellant was obvious; it was simply a question of time before someone invited onto the premises would be attacked by the dog.”
 
 (Uccello
 
 v.
 
 Laudenslayer, supra,
 
 44 Cal.App.3d at pp. 513-514, italics added.)
 

 We reject Sturgeon’s analogy to vicious dogs. In
 
 Uccello,
 
 the landlord knew the tenant’s dog was vicious and previously attacked and bit people. It was this knowledge that made the foreseeability of harm to others “obvious.”
 
 (Uccello
 
 v.
 
 Laudenslayer, supra,
 
 44 Cal.App.3d at p. 513.) Sturgeon offered no evidence the defendants knew Thomas’s conduct posed such a danger to others. The evidence established the defendants knew Thomas had a problem with alcohol; he was convicted of driving under the influence and attended a rehabilitation program. They also knew Thomas had firearms. What was missing from the opening statement was any evidence these two factors created a dangerous condition for those entering the premises. Sturgeon offered no evidence Thomas ever harmed anyone due to either his problem with alcohol or his possession of firearms or that he handled firearms in an unsafe manner while drunk.
 

 
 *308
 
 In vicious dog cases, the dangerous condition, that is, the viciousness of the dog, is established. Here, while a logical possibility of harm attends the combination of firearms and alcohol, nothing put the defendants on notice a visitor might be injured. The presence of firearms, alone, also raises the logical possibility of harm to visitors, but it would be unreasonable to attach a duty simply because the landlord knew about the firearms. The defendant’s additional knowledge of Thomas’s drinking problem did little to increase the foreseeability of harm to visitors since there was no evidence he handled firearms while drinking.
 

 In
 
 Baldwin
 
 v.
 
 Zoradi
 
 (1981) 123 Cal.App.3d 275 [176 Cal.Rptr. 809], the plaintiff was injured when fellow college students engaged in a vehicular speed contest after a drinking party. The plaintiff brought suit against the university for maintaining a dangerous condition on the university premises by permitting students to drink in the dormitory. A demurrer to this cause of action was sustained. The court distinguished cases such as
 
 Uccello,
 
 stating: “However, the conduct of students, without known violent propensities and without knowledge that they would drink to excess and thereafter operate motor vehicles, does not rise to the level of foreseeable harm as does a case where the tenant has a known vicious dog or where he uses rented property as a firing range.”
 
 (Baldwin
 
 v.
 
 Zoradi, supra,
 
 at p. 294.) The same is true here.
 

 When there is no evidence a tenant has violent propensities or handles firearms unsafely while drinking, a landlord’s knowledge that the tenant misuses alcohol and possesses firearms is not a cue the landlord needs to protect visitors from injury. (See
 
 Bigbee
 
 v.
 
 Pacific Tel. & Tel. Co., supra,
 
 34 Cal.3d at p. 57.) Therefore, Sturgeon’s injury was not reasonably foreseeable, and tiie defendants did not owe her a duty of care.
 

 III
 

 Excluded Evidence
 

 Sturgeon contends the trial court erred in excluding evidence Hugh paid for an attorney for Thomas’s defense in a battery action after this incident. She claims this ruling was error because such evidence would show Hugh had control over his son. The court excluded the evidence on the basis its minimal probative value was outweighed by its potential for prejudice. We find no abuse of discretion in this ruling. Evidence of the battery suit was certainly prejudicial and the act of paying for a defense attorney does not show control.
 

 
 *309
 
 Disposition
 

 The judgment is affirmed.
 

 Sims, Acting P. J„ and Scotland, J„ concurred.