Filed 2/28/22 Santizo v. Huerta CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| JONATHAN SANTIZO, | B302172 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC655367) |
| v. | |
| ELVIS HUERTA et al, | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge. Affirmed.

Mark H. Aprahamian and Naris Khalatian for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller and Ernest Slome; Hartsuyker, Stratman & Williams-Abrego, Frank J. Ozello for Defendants and Respondents.

After suffering burns at a backyard graduation party held at a friend's home, Jonathan Santizo (plaintiff) brought a premises liability tort claim against Maria Huerta (Maria), the owner and landlord of the property where the party was held, and her brother, Elvis Huerta (Elvis) (collectively, defendants), who helped manage the property. The trial court granted defendants' motion for summary judgment, reasoning plaintiff's injuries were not foreseeable as a matter of law and were not caused by defendants. We are asked to decide whether the grant of summary judgment should be reversed for reasons procedural (an asserted error in granting judgment on a ground not raised in defendants' moving papers) or substantive (the existence of a material dispute of fact concerning whether defendants owed plaintiff a duty of care).

## I. BACKGROUND

In October 2013, Maria leased residential property she owned in Santa Fe Springs, California, to Veronica Bonilla (Bonilla) and her family, which included her son Dominique who was 15 years old at the time. On the property were a three-bedroom house, a one-car garage, and an open-ended, covered storage shed that was attached to the garage.

In signing the lease, Bonilla affirmed she had inspected the property, its furnishings, and equipment and found them to be "satisfactory and in good working order." The lease required Maria, at her sole cost and expense, to maintain the property's air conditioning system and "water lines," among other things. The lease also limited Maria and her agent's right to enter the property to certain specified circumstances, such as making necessary or agreed-upon repairs. In addition, the lease provided

2

for "quarterly walk-[throughs]" by Maria or her agent during the first year of the lease and "bi-yearly thereafter."

### A. Things Go Wrong with the Fire Pit, and Plaintiff Later Sues

Two and a half years later, in the evening on May 22, 2016, Dominique hosted a small high school graduation party at the property. Plaintiff was among the invitees. Neither Maria nor Elvis were present at the property during the party. Bonilla (Dominique's mother) was there.

During the party, which was held outdoors, Dominique retrieved a portable fire pit from the storage shed and placed it on the backyard lawn. After the party-goers placed chairs around the fire pit, Dominique, who had never before operated the fire pit but had seen his stepfather use one while on a camping trip a year earlier, poured gasoline onto the wood in the pit and then used a lighter to start the fire.

After a time, the fire began to die out. Dominque unwisely decided to try to restart the fire by pouring gasoline on the hot embers. As he poured the gasoline, flames climbed the stream of fuel and the gasoline canister caught on fire. Dominique then threw the flaming canister to the ground.

When plaintiff, who had been sitting near Dominique, saw a "fireball" coming his way, he attempted to back away but was instead pushed toward the fire. Plaintiff attempted to extinguish the fire by stomping on it. As he did so, he noticed his shorts had caught fire and he suffered burns to his body. Eventually, another guest extinguished the fire by smothering it.

Using a form complaint, plaintiff sued defendants and Dominique and asserted a premises liability cause of action.

Plaintiff alleged all defendants were "negligent in failing to properly maintain, inspect, supervise, [and] operate[ ] the fire pit and did not have safety equipment."

### B.    *Summary Judgment Filings*

Defendants (Maria and Elvis) moved for summary judgment. They argued plaintiff could not establish they owed him a duty of care. Defendants maintained they had no actual or constructive knowledge of the fire pit, nor any reason to inspect the premises for a fire pit. Declarations from both defendants maintained they were not aware Bonilla and her family brought a fire pit onto the property until months after the party where plaintiff was burned.

Defendants' declarations were supported by deposition testimony from Bonilla, who stated she did not know of the fire pit until after the incident and did not remember ever seeing it before then, and from Dominique, who acknowledged defendants had no knowledge of the fire pit.[1] Elvis, who visited the property occasionally to collect rent and help with property maintenance, stated he never saw the fire pit and did not observe any burned grass suggestive of a fire pit's use on the property. In addition to a lack of notice, defendants argued it was not foreseeable that Dominique would misuse the fire pit by pouring gasoline on hot embers.

---

[1]    Dominique testified during his deposition that the fire pit was kept at the rear of the storage shed on the ground behind a bicycle, a lawnmower, and garden tools—and that the entrance to the shed from the backyard was covered by a bamboo curtain.

4

Plaintiff's opposition advanced four theories of liability in an effort to defeat summary judgment.

Plaintiff argued defendants had actual or constructive knowledge of both the fire pit's existence and the dead or dying condition of the backyard grass (that made it particularly susceptible to catching on fire). To support the assertion of actual or constructive knowledge, plaintiff highlighted Elvis's regular visits to the property to pick up mail and rent during the first two years of Bonilla's tenancy, some of which included trips to the backyard to perform maintenance, and his presence on a "couple" of occasions to watch his daughter play with Bonilla's daughter on a trampoline.[2] Plaintiff argued the bamboo curtain covering the opening to the storage shed where the fire pit was stored was sufficiently transparent to permit observation of just the top of the portable fire pit behind the other items in the shed. Plaintiff did not dispute, however, that defendants did not own the fire pit or place it on the property and defendants were not at the property on the night plaintiff was burned.

Plaintiff also argued, alternatively, that it did not matter whether defendants knew of the claimed dangerous condition on

---

[2] In the trial court and on appeal, plaintiff asserts Elvis attempted to repair the property's sprinkler system in the backyard during Bonilla's tenancy. The assertion is based solely on the deposition testimony of Bonilla. Bonilla did testify she notified Elvis about the inoperative sprinklers, but she was equivocal about whether Elvis ever attempted to remedy the problem. Although she recalled Elvis and his father working in the backyard for "hours" on one occasion, she repeatedly testified she was "not a hundred percent sure" if Elvis and his father were working on the sprinkler system or something else.

the property (i.e., the fire pit or the dried out lawn) because defendants violated various fire safety laws and local ordinances. A supporting declaration from former State Fire Marshall James F. McMullen (McMullen) opined, for instance, that defendants violated Fire Code section 307.5, which requires that a fire extinguisher or other firefighting equipment, such as a garden hose, be available for immediate use whenever portable outdoor fireplaces are used. McMullen also opined that defendants' neglect of the lawn in the backyard violated Santa Fe Springs ordinance 95.03, which prohibits property owners from creating a fire hazard through the existence of dead ground cover.

Plaintiff further argued Maria was negligent in entrusting management of the property to Elvis, who was not qualified to act as a property manager and did not discover and rectify various purportedly hazardous conditions in the backyard, such as dead or dying grass and malfunctioning sprinklers. A declaration submitted by Jay T. Kacirk (Kacirk), a certified property manager, opined Elvis was negligent because he did not perform thorough, periodic inspections of the property.

Finally, plaintiff argued defendants owed him a duty of care pursuant to the terms of the lease, which required Maria to maintain and repair the property's water lines (which plaintiff read to include the sprinkler system), and the terms of Maria's home insurance contract, which obligated Maria to maintain "in working order" either "an alarm system or automatic sprinkler system."

In their reply brief, defendants argued the conclusions offered by McMullen and Kacirk about fire safety violations and negligent property management were impermissible legal opinions. Defendants also argued McMullen's opinions were

6

based on assumptions not supported by the facts (e.g., that Elvis must have or should have seen the fire pit on one of his visits to the property that took him to the backyard). Defendants also argued that "[it] was the Tenant's son pouring gasoline on the embers, causing the gas can to ignite and allegedly be thrown in [p]laintiff's direction that caused his injuries, not the [dry, brown] grass."

### C. *The Trial Court's Ruling*

In advance of the hearing on defendants' motion for summary judgment, the court issued a tentative ruling proposing to grant the motion. The tentative ruling found defendants were entitled to judgment as a matter of law "because they did not cause [p]laintiff's injuries and because [p]laintiff's injuries were not foreseeable." Elaborating, the tentative reasoned: "Defendants did not cause anyone to have a fire pit, maintain a fire pit, or use a fire pit; even if Defendants knew the fire pit existed, this would not alter the analysis. Defendants did not cause [Dominique] to dump gasoline onto the burning fire. Defendants did not cause [Dominique] to throw a gasoline canister in [p]laintiff's direction. While the dry grass may have slightly exacerbated the problem, it was not foreseeable, as a matter of law, that someone would choose to dump gasoline onto a lit fire and then throw the canister across the yard."

At the summary judgment hearing, plaintiff objected to defendant's reply brief, arguing, among other things, that it raised an issue which was not raised in defendants' moving papers—i.e., causation—that appeared to animate the court's tentative conclusion that summary judgment should be granted. Plaintiff asked for an opportunity to submit supplemental

7

briefing on the issue of causation. The court denied the request for briefing because it believed the facts giving rise to the causation issue were "very well known" to the parties and the court and had been for a "very long time." But the court did offer to entertain a request to continue the hearing to permit plaintiff to better prepare for oral argument on the causation issue. Plaintiff's counsel declined the court's offer and elected to proceed, thereafter arguing both that defendants had a duty of care and proximately caused plaintiff's injuries.

After hearing argument, the trial court granted summary judgment for defendants. Explaining its thinking on the record during the hearing, the court observed defendants were not on notice of a risk of harm to plaintiff or any other invitee, because there was "no inherently dangerous situation" on the property. In the trial court's view, even if both the canister of gas and the fire pit were readily visible, neither one served to put defendants on notice of a risk of harm. The court opined "gasoline is very often stored in a backyard to run weed wackers and lawnmowers," and the fire pit was a "perfectly legal" home appliance, one readily available at any number of commercial venues. In other words, the court explained, the presence of gasoline and a fire pit were not the equivalent of "finding stored explosives [on the property]." The trial court further found there was "no way" defendants could have foreseen Dominique pouring gasoline on burning embers in the fire pit or plaintiff stepping on the gasoline spilling out of the discarded gas canister while he himself was on fire.

The court stated it would adopt its tentative decision as its final order. As already discussed (and as we shall revisit), that order concluded defendants were entitled to judgment as a

8

matter of law "because they did not cause [p]laintiff's injuries and because [p]laintiff's injuries were not foreseeable."  The court did not rule on the parties' respective evidentiary objections because "a ruling on the objections would not change the outcome of the ruling on the motion."

## II.  DISCUSSION

Plaintiff argues he was denied due process of law because summary judgment was granted to defendants on an issue—causation—that was not raised in defendants' moving papers.  That understands the trial court's ruling too narrowly, however.  The trial court's order granting summary judgment finds defendants were entitled to judgment as a matter of law for two separate reasons: causation, and what the court called "foreseeability."  The reference to foreseeability, which is the most important element of a duty of care analysis that was the focus of defendants' motion for summary judgment, is a proxy (albeit one that could have been clearer) for the court's conclusion that defendants owed plaintiff no duty of care; indeed, there would be no need to mention foreseeability separate from causation if the court's ruling rested solely on proximate cause grounds.  Plaintiff had an opportunity to brief and argue whether a duty of care existed.  Moreover, even if the trial court's order is read as narrowly as plaintiff proposes (i.e., as limited only to causation), there still was no due process violation because the court offered to entertain a request to continue the hearing to give plaintiff further time to prepare his argument and plaintiff declined the offer.

On the merits, defendants were entitled to judgment as a matter of law because plaintiff did not establish the existence of a

9

dispute of material issue of fact on whether he was owed a duty of care. There is no substantial evidence in the summary judgment record that defendants had actual or constructive knowledge of the fire pit, and without that, mere dry grass (or the absence of a portable fire extinguisher or garden hose) is not a dangerous condition as a matter of law. Furthermore, even if there were evidence on which a jury could rely to find defendants should have been aware of the fire pit's presence on the property, that knowledge alone still does not suffice to permit a finding that defendants owed plaintiff a duty of care. It was not foreseeable that tenant's son (or any other family member) would use the fire pit in a demonstrably unsafe manner by pouring gasoline on burning embers, and lacking foreseeability, there is no basis to impose a duty of care.

### A. *The Trial Court Did Not Deny Plaintiff Due Process of Law*

Plaintiff maintains that when the trial court found that the incident was "not foreseeable as a matter of law," the court was "considering foreseeability as an element of causation," and not an element of duty. Citing *Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59 (*Juge*), plaintiff argues that because defendants did not raise or address causation in their moving papers, he was denied due process of law when the trial court granted summary judgment to defendants on that issue. Plaintiff's argument is at odds with the plain language of the final order.

The final order does not state the trial court decided the motion on causation grounds alone. Rather, it expressly states defendants were entitled to summary judgment "because they did

10

not cause [p]laintiff's injuries *and* because [p]laintiff's injuries were not foreseeable." (Italics added.) The court's choice of language shows it regarded foreseeability as something separate and distinct from the issue of causation. (If, as plaintiff maintains, the court used "foreseeability" as an element of causation, then the court's ultimate finding would be illogical on its face—granting summary judgment to defendants on causation grounds twice.) In view of the fact that defendants' motion was based solely on grounds of duty, and because foreseeability is a "crucial" consideration in determining whether a defendant owes a duty of care to the plaintiff (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676 (*Ann M.*)), the phrasing in the court's final order indicates the court used the term "foreseeability" as shorthand for a duty of care analysis. And plaintiff undisputedly had an opportunity to brief that.

Moreover, even assuming just for argument's sake that plaintiff were correct that the references in the final order to "foreseeability" did pertain only to a causation analysis, there still was no violation of due process.

Plaintiff did not dispute the facts upon which the trial court's causation finding was predicated (none of which were established by evidence submitted in reply, as defendants submitted no evidence with their reply), and after learning the court was predisposed to grant defendants' motion on what plaintiff believes were causation grounds, plaintiff rejected the court's invitation to request a continuance to better prepare for a hearing on those issues. No violation of due process occurs under such circumstances. (See, e.g., *Juge*, *supra*, 12 Cal.App.4th at 72-73 [no procedural error where the plaintiff had not denied in his opposition papers the material facts set forth by the county that

11

justified a causation-based ruling and the plaintiff declined the court's invitation to request a continuance after being advised the court was inclined to grant summary judgment on causation grounds].)

> B.    *Summary Judgment Was Appropriate Because There Is No Factual Dispute that Defendants Owed Plaintiff No Duty of Care*

Where a "'case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.]  "'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'" [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.  [Citation.]' [Citation.]" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717; accord, *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.)  A party opposing a summary judgment motion, however, must produce evidence that is both admissible[3] and "substantial." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 (*Sangster*) ["the plaintiff must produce substantial responsive evidence sufficient to establish a triable issue of material fact on the merits of the defendant's showing"]; accord,

---

[3]    Although the trial court did not rule on any of the parties' evidentiary objections, we proceed as if the trial court had overruled all of them.  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)

12

*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415 ["The plaintiff must produce "*substantial*" responsive evidence sufficient to establish a triable issue of fact"].)

"Duty is a necessary element of a cause of action for premises liability." (*Garcia v. Holt* (2015) 242 Cal.App.4th 600, 604 (*Garcia*).) Generally, a landowner has a duty to maintain the land in a reasonably safe condition. (*Ann M.*, *supra*, 6 Cal.4th at 674.) Exceptions to this general rule of liability are made only when clearly supported by public policy. (*Rowland v. Christian* (1968) 69 Cal.2d 108, 112 (*Rowland*).) *Rowland* sets forth the following considerations to balance when determining whether an exception to the general rule of liability should be made: "foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Id.* at 113.)

The *Rowland* factors, however, are not accorded equal weight. Our Supreme Court has instructed that foreseeability should be regarded as a "crucial" consideration. (*Ann M.*, *supra*, 6 Cal.4th at 676; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 166 [foreseeability is the ""most important"" consideration]; see also *Sturgeon v. Curnutt* (1994) 29 Cal.App.4th 301, 306 ["If the court concludes the injury was not foreseeable, there was no duty. There is no need to discuss the remaining considerations"] (*Sturgeon*).)

13

"Historically, the public policy of this state generally has precluded a landlord's liability for injuries to his tenant or his tenant's invitees from a dangerous condition on the premises which comes into existence after the tenant has taken possession. This is true even though by the exercise of reasonable diligence the landlord might have discovered the condition." (*Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 510 (*Uccello*); accord, *Garcia*, *supra*, 242 Cal.App.4th at 604 ["Public policy precludes landlord liability for a dangerous condition on the premises which came into existence after possession has passed to a tenant"].) "The rationale for this rule has been that property law regards a lease as equivalent to a sale of the land for the term of the lease." (*Uccello*, *supra*, 44 Cal.App.3d at 510.) "'[W]here a landlord has relinquished control of property to a tenant, a "bright line" rule has developed to moderate the landlord's duty of care owed to a third party injured on the property as compared with the tenant who enjoys possession and control. '"Because a landlord has relinquished possessory interest in the land, his or her duty of care to third parties injured on the land is attenuated as compared with the tenant who enjoys possession and control. Thus, before liability may be thrust on a landlord for a third party's injury due to a dangerous condition on the land, the plaintiff must show that the landlord had actual knowledge of the dangerous condition in question, plus the right and ability to cure the condition.' [¶] Limiting a landlord's obligation releases it from needing to engage in potentially intrusive oversight of the property, thus permitting the tenant to enjoy its tenancy unmolested.'" [Citation.]" (*Garcia*, *supra*, 242 Cal.App.4th at 604-605.) Two cases illustrate the operation of this bright line

14

notice rule: *Garcia*, *supra*, 242 Cal.App.4th 600, and *Sturgeon*, *supra*, 29 Cal.App.4th 301.

In *Garcia*, the defendants leased a resident property to a tenant, who at some time during the tenancy created homemade explosives and stored them on the property. (*Garcia*, *supra*, 242 Cal.App.4th at 602.) At or around the same time they leased the property to the tenant, the defendants hired Garcia to maintain the landscaping at the property. (*Ibid*.) Over the course of the next five years, Garcia never noticed anything suspicious or dangerous. (*Id*. at 602-603.) During the fifth year of the tenancy, Garcia walked over unstable explosive material on the ground at the back of the property and the material exploded. (*Id*. at 603.) Garcia sued for premises liability, alleging the defendants were negligent in their maintenance by allowing explosive materials to be kept on the property. (*Ibid*.) Defendants moved for summary judgment arguing they owed no duty to Garcia because they had no actual or constructive knowledge of the explosive materials. (*Ibid*.) In opposition, Garcia argued that because defendants had a right to periodically enter the property, they had a corresponding duty to periodically inspect the property regardless of actual knowledge of a dangerous condition. (*Id*. at 603, 605.)

The trial court granted the defendants' motion and the Court of Appeal affirmed. (*Id*. at 603, 606.) The Court of Appeal held "[t]he obligation to inspect arises 'only if [the landowner] had some reason to know there was a need for such action.' [Citation.]" (*Id*. at 605; accord, *Oh v. Teachers Ins. and Annuity Assn. of America* (2020) 53 Cal.App.5th 71, 86 (*Oh*) [no duty to tenant's employee because "an inspection would have revealed nothing marked as hazardous or dangerous. 'The landlord need not take extraordinary measures or make unreasonable

15

expenditures of time and money in trying to discover hazards unless circumstances so warrant'"].)

In *Sturgeon*, the Curnutts rented a house to their son, Thomas. (*Sturgeon, supra*, 29 Cal.App.4th at 303.) While under the influence of alcohol, Thomas waved a gun around; it went off and struck a visitor, Sturgeon. (*Id.* at 303.) Sturgeon sued the Curnutts for premises liability. (*Id.* at 304.) The trial court granted nonsuit. (*Id.* at 305.) The Court of Appeal affirmed, holding "the [Curnutts] did not owe a duty of care to [Sturgeon] because the injury was not foreseeable." (*Id.* at 303.) "The evidence established the defendants knew Thomas had a problem with alcohol; he was convicted of driving under the influence and attended a rehabilitation program. They also knew Thomas had firearms. What was missing . . . was any evidence these two factors created a dangerous condition for those entering the premises. Sturgeon offered no evidence Thomas ever harmed anyone due to either his problem with alcohol or his possession of firearms or that he handled firearms in an unsafe manner while drunk." (*Id.* at 307.) "[W]hile a logical possibility of harm attends the combination of firearms and alcohol, nothing put the defendants on notice a visitor might be injured. The presence of firearms, alone, also raises the logical possibility of harm to visitors, but it would be unreasonable to attach a duty simply because the landlord knew about the firearms. The defendant's additional knowledge of Thomas's drinking problem did little to increase the foreseeability of harm to visitors since there was no evidence he handled firearms while drinking." (*Id.* at 308.)

Even construing the evidence liberally in plaintiff's favor, there is nothing that would permit a jury to find defendants had actual or constructive knowledge of a fire pit at the property—

16

and, thus, that a fire-related injury to an invited guest was foreseeable. Both defendants declared they did not learn of the fire pit until after plaintiff was injured. Their testimony was supported by Dominique, who testified defendants had no knowledge of the fire pit, and by his mother. Bonilla, who did not just periodically visit the property as Elvis did but lived there day in and day out, testified she never knew a fire pit was on the property until after plaintiff was injured. (*Garcia*, *supra*, 242 Cal.App.4th at 605; *Bisetti v. United Refrigeration Corp*. (1985) 174 Cal.App.3d 643, 648-649 [summary judgment affirmed on landlord's declaration he had no knowledge of dangerous vat on premises or hole in the fence].) The absence of evidence that defendants knew or should have known that Bonilla and her family were storing and/or using a fire pit at the property establishes it was not foreseeable to defendants that an invited guest on the property was at risk from a dangerous fire-related condition.[4]

---

[4]     Apart from the stored-away fire pit itself, plaintiff also points to the dry grass in the property's backyard (and perhaps the absence of a garden hose or fire extinguisher) as itself a dangerous condition. Our discussion focuses on the fire pit because these features of the property cannot, as a matter of law, support a premises liability claim with nothing more (i.e., without actual or constructive knowledge of the portable fire pit). (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 566 ["The law imposes no duty on a landowner—including a public entity—to repair trivial defects, or 'to maintain [its property] in an absolutely perfect condition'"]; see also *Ursino v. Big Boy Restaurants* (1987) 192 Cal.App.3d 394, 399 ["The rule which permits a court to determine 'triviality' as a matter of law rather than always submitting the issue to a jury provides a check valve

17

Furthermore, even if defendants were aware or should have been aware of the fire pit's presence, there was no evidence defendants were on notice Dominique or any other member of Bonilla's family would use the fire pit in a demonstrably unsafe manner by pouring gasoline on hot embers. There was no evidence the fire pit had previously been used at the property by Dominique or anyone else, and no evidence Dominique or anyone else in his family had ever operated a fire pit in a dangerous manner. As Elvis stated in his declaration, there were no singe marks in the backyard suggesting a fire pit was being used there. Dominique testified he had never used the fire pit prior to the night of the incident and had only seen a different fire pit used one time before while on a camping trip away from the property. In the absence of evidence that Bonilla or members of her family engaged in unsafe fire pit behavior and defendants knew of such conduct, any knowledge by defendants that a fire pit was stored on the premises would not trigger a duty to inspect the property or protect visitors to the property from injury arising from a fire pit's operation. (*Sturgeon, supra*, 29 Cal.App.4th at 308.)

Plaintiff, however, asserts liability can still be had in certain limited circumstances where, in his words, "the landlord volunteers to repair a defective condition, . . . when there is a violation of a safety law, or where the injury occurs in an area where the landlord retains control." (*Garcia, supra*, 242 Cal.App.4th at 605.) Even accepting plaintiff's view of the law,

for the elimination from the court system of unwarranted litigation which attempts to impose upon a property owner what amounts to absolute liability for injury to persons who come upon the property"].)

there is no substantial evidence in the summary judgment record that would permit a finding that these limited circumstances are present here.

Plaintiff, for instance, argues defendants volunteered to repair the backyard sprinklers but failed to do so, thereby contributing to his injuries. Although the lease provided it is the sole responsibility of the landlord to maintain the property's "water lines," plaintiff failed to present any evidence that the property's water lines included the sprinkler system. Moreover, the evidence that was presented suggested the sprinkler system was the tenant's responsibility, not the landlord's. It was Bonilla, not defendants, who called a gardener and paid for the sprinkler system to be repaired and there was no evidence she was reimbursed by defendants for the cost of the repair. In addition, plaintiff did not present any evidence that after the sprinkler system failed following its repair, Bonilla again alerted defendants that the system was broken.

Plaintiff also asserts defendants were liable for his injuries because of certain alleged safety violations. The assertion fails, however, because there is no substantial evidence defendants were on notice of the fire pit's existence or use on the property; as a result, they were necessarily unaware of any code violations related to the fire pit. As the Court of Appeal explained in *Oh*, *supra*, 53 Cal.App.5th 71, while a property owner may be responsible for correcting or abating code violations once notified or aware of the violation, there is "no authority for the proposition that an owner violates [a statute or regulation] . . . if it does not correct a code violation it did not commit and does not

know, or have reason to know, existed."[5] (*Id.* at 83-84 ["It was not defendants who utilized the premises in violation of the Fire Code or caused that to be done—it was [the tenant]"].)

Plaintiff's related contention that it was the dry grass in the backyard that constituted a safety violation (and dangerous condition) fails for a similar reason. Even assuming for argument's sake that the dryness of the grass could be determined through nonexpert observation alone to be at a dangerous level under then-prevailing conditions (meaning a hazard that exists "to a greater degree than customarily recognized as normal by persons in the public service of preventing, suppressing or extinguishing fire" (Cal. Code Regs., tit. 19, § 3.14)), there is still no evidence in the record that permits us to determine precisely how dry the grass actually was at the relevant time nor any substantial evidence that defendants in fact were aware of the lawn's state prior to the accident. There was deposition testimony that defendants were at some point aware the backyard sprinklers were not working and additional

---

[5] In addition, McMullen's opinion that defendants violated various safety laws does not constitute substantial evidence sufficient to raise a triable issue of fact. The California Evidence Code does not "authorize an 'expert' to testify to legal conclusions in the guise of expert opinion. Such legal conclusions do not constitute substantial evidence. [Citation.] 'The manner in which the law should apply to particular facts is a legal question and is not subject to expert opinion. [Citation.]' [Citation]." (*Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841; accord, *Hass v. RhodyCo Productions* (2018) 26 Cal.App.5th 11, 21, fn. 2 ["[C]ourts do not consider an expert's testimony to the extent it constitutes a conclusion of law"].)

20

testimony that Elvis regularly visited the premises early on in Bonilla's tenancy, but that is not substantial evidence that can give rise to liability.

Plaintiff's next counterargument, that a trier of fact could find defendants retained control of the backyard, is not supported by the facts or the law. In connection with a residential property, the landlord typically retains control over shared spaces only, "such as common hallways, stairs, [and] elevators." (*Uccello*, *supra*, 44 Cal.App.3d at 511.) The lease did not designate the backyard as a common area and plaintiff did not present any evidence that the parties to the lease treated the backyard as a common area. The only evidence that defendants arguably shared use of the backyard with Bonilla and her family was testimony by Bonilla that on a "couple" of occasions Elvis's daughter played on a trampoline with Bonilla's daughter when Elvis came to pick up his mail or the rent. The lease did give Maria and her agents the right to enter the premises to inspect and make repairs to equipment located in the backyard, but that right is insufficient by itself to establish she retained control of that area. (*Mora v. Baker Commodities, Inc.* (1989) 210 Cal.App.3d 771, 780-781 [the right to inspect and make repairs did not establish landlord retained control of the property, because the obligation to inspect and repair "occurs only if [the landlord] had some reason to know there was a need for such action"].) As already discussed, there was no evidence defendants were on notice to inspect the property for a fire pit or its use in the backyard.

Plaintiff finally advances a number of contract-based theories for the existence of a duty of care, relying specifically on the lease and Maria's insurance policy. These theories do not

establish it was error to grant summary judgment because they are not alleged in the operative complaint and defendants thus had no obligation to negate them. (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1275 ["Under settled summary judgment standards, we are limited to assessing those theories alleged in the [operative complaint]. [Citations.] '"The burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*"'"].) Plaintiff sued only in tort for premises liability, not breach of contract. Plaintiff's complaint also makes no mention of either the lease or the insurance policy, and the complaint was never amended to add any such references.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


MOOR, J.